**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HELEN E. NORMAN, et al., | : | |
| | : | Civil Action No. 17-4413 (CCC) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| N.J. STATE PAROLE BOARD, et al., | : | |
| | : | |
| Defendants. | : | |

**CECCHI, District Judge.**

This matter has come before the Court on a civil rights Complaint filed by *pro se* Plaintiffs Helen E. Norman and Joseph J. Norman pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendants' motion to dismiss, (ECF No. 16), seeking to dismiss the Complaint in its entirety ("Motion"). For the reasons stated below, the Motion is granted in part, and denied in part.

## I.     BACKGROUND

Plaintiffs are half-brother and half-sister who engaged in a consensual sexual relationship in 2009 while Helen was fourteen, which resulted in Helen conceiving a son.[1] Joseph was later charged and convicted of a sex crime for this relationship, served a custodial sentence, and was released in 2014. As a sex offender, Joseph was and is subject to Parole Supervision for Life ("PSL"), which prohibits him from having contact with (1) the victim of his sex offense, in this case Helen, and (2) any minor. After his release, Helen, now an adult, initiated contact with

---

[1] After the filing of the initial complaint, Plaintiffs filed an amended complaint, which is the subject of the Motion. Unless otherwise noted, references to the "Complaint" refer to the amended complaint.

Joseph. Due to his desire to be with Helen again, and be a father to his son, Joseph ignored his parole conditions and began seeing Helen and his son on a regular basis. During this time, Helen became pregnant again and the two had another son. Joseph's parole officer eventually discovered this situation in February of 2016 and arrested Joseph for violating his parole by contacting his victim. The parole officer was informed by Helen that she wanted the no-victim contact condition lifted.

The New Jersey Parole Board (the "Board") found that Joseph had violated his conditions of parole, but did not recommend revocation, in part because "it is much less clear what danger his engaging in a relationship with a consenting adult poses to the community." (ECF No. 9 at 5.) The Board also took note of a report submitted in connection with the parole hearing, in which a Dr. James Reynolds opined that Helen was in love with Joseph, wanted to be in a relationship with him, and was not in any way coerced to feel that way. Dr. Reynolds also opined that Joseph's presence in Helen's life would be a positive influence in both of their lives. Instead of incarceration, the Board therefore placed Joseph on the Electronic Monitoring Program ("EMP") for six months, in order to ensure that he did not have contact with Helen while her request to lift the no-victim contact condition was under consideration. Helen then sent the Board another letter stating that she wanted the no-victim contact and the no-minor contact conditions to both be lifted so that Joseph would also be allowed to see his sons. Joseph made the same request to the Board.

However, Helen, desperate for financial assistance, started contacting Joseph again via phone and text messages. Joseph continued to provide financial assistance to Helen and their sons, as he has done since his release from prison. Joseph's parole officer eventually discovered the text messages, and again arrested Joseph for violation of his parole. The Board then once again placed him in the EMP. Meanwhile, Helen and their sons' financial situation continued to deteriorate.

The Board eventually agreed to hold the no-contact conditions in abeyance, but required Joseph to see his sons only under Helen's supervision and did not release him from the EMP.

Thereafter, Plaintiffs contend that Joseph's parole officer, Defendant Officer Thawra Naser, who allegedly has a personal disagreement with Plaintiffs' relationship, forcefully coerced Joseph to admit that he had brief contact with one of his sons outside of Helen's presence, when Helen was giving a bath to the other son in the bathroom. Joseph was arrested again for violating his parole conditions, which proceeding is still ongoing. Plaintiffs also allege that Naser interfered with their attempts to obtain an abeyance of the no-contact conditions by threatening both Joseph and his attorney, and that the resultant delay caused them undue hardship. Plaintiffs further allege that their filing of the instant suit resulted in additional charges being levied against Joseph in the ongoing parole proceeding.

## II.    STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Connelly v. Lane Constr. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (precedential). On a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure

12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes–Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe the complaint liberally in the plaintiff's favor. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

### III. DISCUSSION

The Complaint raises four claims: (1) that the no-contact conditions as applied to Joseph, as well as his continued placement in the EMP, violated Plaintiffs' First Amendment right to freedom of association; (2) that Naser's interference with Plaintiffs' attempt to obtain an abeyance of the no-contact conditions, including threats to his attorney, violated their Sixth Amendment right to counsel and Fourteenth Amendment due process rights; (3) that Naser's coercion in regards to the ongoing parole proceeding violated Joseph's Fifth Amendment and Fourteenth Amendment due process rights; and (4) that the levy of additional charges against Joseph after the filing of the initial complaint violated Plaintiffs' First Amendment right to access to the courts.

Defendants, in turn, contend that: (1) the Court should abstain from adjudicating Plaintiffs' claims under *Younger v. Harris*, 401 U.S. 37 (1971); (2) Plaintiffs' claims must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) Plaintiffs' claims must be dismissed, insofar as they seek monetary damages against the Board and other defendants in their official capacity, because they are not "persons" amendable to suit under *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

### A. Abstention

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court established "a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). "*Younger* abstention," as the doctrine is colloquially known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." *Evans v. Ct. of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992), *cert. dismissed*, 506 U.S. 1089 (1993). Federal courts are therefore directed to decline to exercise jurisdiction when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims [if any]." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).

Furthermore, it is "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43-44. The "fundamental purpose of restraining equity jurisdiction within narrow limits is . . . important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44. As such, in the interest of comity and federalism, "federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010).

"[I]n view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.'" *Younger*, 401 U.S. at 46.

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id.* "[A]bsent a showing of bad faith or an intent to harass, federal courts should decline requests to enjoin state criminal prosecutions, 'particularly . . . when the moving party has an adequate remedy' in state court." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 180 (3d Cir. 2014) (quoting *Younger*, 401 U.S. at 43).

Here, the only claim that appears to implicate Joseph's ongoing parole proceeding is Count III, which relates to Joseph's allegedly coerced confession. As such, it is a defense he can raise in the ongoing parole proceeding and this Court accordingly abstains under *Younger*. In contrast, the Court finds that neither Count II nor Count IV involve ongoing state proceedings and, therefore, the Court declines to abstain as to either Count. Finally, Count I could arguably be construed as involving an ongoing proceeding, insofar as it relates to Plaintiffs' requests that the Board lift Joseph's no-contact conditions. Nonetheless, the Court cannot find that requests to the Board to lift a condition of parole are "judicial in nature" for the purposes of *Younger* abstention. *See Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985) (finding that a proceeding where "[t]here was no right to compel the attendance of witnesses or to cross-examine . . . no right to discovery . . . and no cognizable burden of proof" is not judicial in nature). Moreover, based on the allegations in the Complaint, the Court cannot find that the state "proceeding" affords Plaintiffs an adequate opportunity to raise their freedom of association claim. For example, Joseph's initial placement

in the EMP was to ensure his continued adherence to the no-contact conditions while the Board considered the requests to lift said conditions. Once the Board decided to hold the conditions in abeyance, however, Joseph was not removed from the EMP, resulting in his placement in a program that was designed to monitor his adherence to parole conditions that no longer exist. These circumstances, coupled with allegations of Naser's unreasonable supervision of Joseph, even following the abeyance, lead this Court to conclude that the state proceeding does not afford Plaintiffs an adequate opportunity to raise their federal claim. As such, the Motion seeking abstention is granted as to Count III and is denied as to all other Counts.

### B. *Heck v. Humphrey*

In *Heck*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87. In *Wilkinson v. Dotson*, the Supreme Court further clarified its holding in *Heck*, explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." 544 U.S. 74, 81-82 (2005).

Here, Counts II and IV have no relation to the parole proceedings and therefore do not implicate *Heck*. Count I implicates *Heck* to the extent that it involves monetary damages for any unconstitutional imprisonment and conviction resulting from an alleged violation of Joseph's First

7

Amendment rights, through the imposition of the no-contact conditions during his first two parole proceedings. *Heck* does *not*, however, bar damages arising from the prevention of Joseph and Helen's associating with each other, or damages that arise from interfering with Joseph's ability to be a father to his sons. Moreover, because the latest parole proceeding has not yet concluded, *Heck* does no work to bar damages for any current imprisonment arising from Joseph's latest arrest; *Heck* only bars damages for alleged unconstitutional imprisonment if it would invalidate a *conviction*. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (holding that the *Heck* bar takes effect only when a conviction has been obtained). Therefore, the Court declines to dismiss Plaintiffs' claims under *Heck*, because Counts II and IV do not implicate *Heck*, and only a portion of the relief sought under Count I may be barred by *Heck*. To the extent Defendants seek to limit the damages Plaintiffs can recover under Count I, they may file a motion at the appropriate stage of the proceedings.

### C. Official Capacity Damages Claims

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (holding that the *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable to "the States or their agencies, which retain their immunity against all suits in federal court"). Civil rights claims under

42 U.S.C. § 1983, moreover, do not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 338 (1979).

The Supreme Court held that official capacity claims against state officials are essentially claims against the state, not against a person. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because a state cannot be sued in federal court under § 1983, there can be no official capacity claims against state officials, except those under *Ex parte Young*, 209 U.S. 123 (1908), which authorizes only injunctive relief. *Metcalf*, 506 U.S. at 146. Since the Board is a state agency, and Plaintiff cannot assert damages claims against the other defendants in their official capacity, Defendants' Motion is granted and all damages claims against Defendants in their official capacity are dismissed.

Date: May 29, 2018 _____

Claire C. Cecchi, U.S.D.J.