**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HELEN E. NORMAN and JOSEPH J. NORMAN,<br><br>                              Plaintiffs,<br><br>          v.<br><br>NEW JERSEY STATE PAROLE BOARD, et al.,<br><br>                              Defendants. | Civ. Action No. 17-4413 (JXN) (ESK)<br><br>**OPINION** |

**NEALS**, District Judge

Plaintiffs Helen E. Norman and Joseph J. Norman are proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983 and state law. (Third Am. Compl., ECF No. 41.) Presently before the Court are Defendants' motion for summary judgment, (Defs.' Mot. for Summ. J., ECF No. 78), and Plaintiffs' cross-motion for summary judgment, (Pls.' Mot. for Summ. J., ECF No. 79.) For the reasons below, the Court will deny Plaintiffs' and Defendants' motions for summary judgment in all respects.

## I.   **FACTUAL BACKGROUND**

In 2009, a jury convicted Joseph Norman of a sex offense against then fourteen-year-old Helen Norman. (*See* ECF No. 41 ¶ 8; Defs.' Statement of Material Facts, ECF No. 78-3 ¶ 2.) As a result of the offense, Helen became pregnant and bore a child, A.N. (*See* ECF No. 41 ¶ 8; ECF No. 78-3 ¶ 2.)

The sentencing court sentenced Joseph to a term of imprisonment, five years of mandatory parole supervision, and to a term of Parole Supervision for Life ("PSL") pursuant to N.J. Stat. §

2C:43-6.4.  (*See* ECF No. 78-3 ¶ 3; Pls.' Statement of Material Facts, ECF No. 79-3 ¶ 5.)  The PSL implementing regulation requires that Joseph refrain from contacting Helen, *see* N.J. Code § 10A:71-6.12(d)(19) (the "no-victim-contact condition"), and, because she was a minor at the time of the offense, the regulation further requires that Joseph refrain from initiating, establishing, or maintaining contact with any minor, to refrain from attempting to do so, and to refrain from residing with any minor without prior approval of the District Parole Supervisor, *see* § 10A:71-6.12(e) (the "no-minor-contact condition").

In September 2014, officials released Joseph from custody, and he began serving his PSL term. (ECF No. 78-3 ¶ 6; ECF No. 79-3 ¶ 5.) After Joseph's release, Helen, now an adult, began to reach out to him. (ECF No. 41 ¶ 13.) Joseph disregarded the PSL conditions and began seeing Helen and A.N. on a regular basis in the Spring of 2015. (*See id.* ¶ 14.) During this period, Helen became pregnant again and the two had another son, N.N. (*See id.* ¶ 18.)

Parole officers subsequently charged Joseph with violating his PSL conditions for contacting Helen. (*See* ECF No. 79-3 ¶ 7; Defs.' Response to Pls.' Statement of Material Facts, ECF No. 81-1 ¶ 7.) The New Jersey State Parole Board (the "Board") found that Joseph had violated his conditions of parole, but it did not recommend revocation. (*See* ECF No. 79-3 ¶ 7; ECF No. 81-1 ¶ 7.) Instead, the Board placed him on the Electronic Monitoring Program ("EMP") and released him. (*See* ECF No. 79-3 ¶ 10; ECF No. 81-1 ¶ 10.)

After Joseph's release, Helen and Joseph communicated via phone and text messages. (ECF No. 41 ¶ 38.) Hoping to see Joseph in person, Helen wrote the Board informing it of her desire to contact Joseph. (ECF No. 79-3 ¶ 15; ECF No. 81-1 ¶ 15.) Joseph's attorney also formally requested that the Board lift the no-victim-contact condition of Joseph's parole. (ECF No. 79-3 ¶ 13; ECF No. 81-1 ¶ 13.)

On August 5, 2016, parole officers made a surprise visit to Joseph's residence and observed the messages to and from Helen on his phone. (ECF No. 41 ¶ 41.) As a result, the officers took Joseph into custody and charged him with violating the no-victim-contact condition of his parole. (ECF No. 79-3 ¶ 14; ECF No. 81-1 ¶ 14.) On January 18, 2017, the Board again found that Joseph had violated his conditions of parole but concluded that the violation was not serious enough to warrant revocation. (ECF No. 79-3 ¶ 18; ECF No. 81-1 ¶ 18.) Instead, the Board reinstated Joseph onto parole, and subsequently approved holding the no-victim-contact condition in abeyance. (ECF No. 79-3 ¶¶ 18–19; ECF No. 81-1 ¶¶ 18–19.) The no-*minor*-contact condition, however, remained in effect. (*See* ECF No. 79-3 ¶ 23; ECF No. 81-1 ¶ 23.)

In April 2017, Joseph helped Helen and their children move into a new apartment. (ECF No. 41 ¶ 111.) However, in May 2017, parole officers found out and allegedly coerced Joseph into falsely stating that he had been alone with one of his sons during the move while Helen was busy giving the other son a bath. (*Id.* ¶ 136.) As a result, officers took Joseph into custody once again. (*See id.* ¶¶ 122–140.)

Subsequently, Joseph and Helen filed a formal "Live with Children" request ("LWC") to allow Joseph to live with his two minor children. (ECF No. 79-3 ¶ 20; ECF No. 81-1 ¶ 20.) After a couple weeks had passed without a decision from the Board, Joseph and Helen initiated this lawsuit by filing a complaint on June 15, 2017. (*See* Compl., ECF No. 1.)

On October 18, 2017, a panel of the Board found that Joseph had violated the no-minor-contact condition of his parole based in part on his May 2017 statement about contact with his son. (ECF No. 41 ¶ 149.) Accordingly, the panel revoked Joseph's PSL status and ordered him to serve a one-year term of incarceration. (*Id.* ¶ 150.) Approximately one year later, the State released Joseph on parole. (*Id.* ¶ 173.)

On September 26, 2018, the Board denied Joseph's LWC request. (ECF No. 79-3 ¶ 23; ECF No. 81-1 ¶ 23.) Thereafter, Joseph submitted a second LWC request to the Board, (ECF No. 79-3 ¶ 24; ECF No. 81-1 ¶ 24), but the Board denied this too on March 26, 2019. (ECF No. 79-3 ¶ 31; ECF No. 81-1 ¶ 31.)

Joseph appealed from the denial of his second LWC request. (ECF No. 79-3 ¶ 33; ECF No. 81-1 ¶ 31.) On July 18, 2019, in response to the appeal, the Board finally granted Joseph's LWC request. (*See* ECF No. 79-3 ¶ 35; ECF No. 81-1 ¶ 35.)

The matter did not end there, however, because, in September 2019, Joseph requested permission from his parole officers to reside with his soon-to-be-born daughter. (ECF No. 79-3 ¶ 37; ECF No. 81-1 ¶ 37.) On September 10, 2019, officers granted the request but noted that "permission can be revoked at any time due to non-compliance with his conditions of supervision." (ECF No. 79-3 ¶ 38; ECF No. 81-1 ¶ 38.)

## II. **RELEVANT PROCEDURAL HISTORY**

As noted above, Plaintiffs initiated the instant matter by filing a complaint on June 15, 2017. (*See* Compl., ECF No. 1.) Plaintiffs' Third Amended Complaint, the operative complaint in this matter, raises seven claims against the Board, Board employees Senior Parole Officer Thawra Naser and Lt. Julienne Sirico, and "John and Jane Does." (ECF No. 41.)

On September 18, 2018, this Court entered an order reflecting the parties' stipulation to the dismissal of Counts 1, 2, and 3 as well as the portion of Count 4 seeking monetary damages against the Defendants. (*See* ECF No. 70.) Accordingly, the only remaining claims are Counts 4, 5, 6, and 7 alleging:

> (4) that Defendants' interference with Plaintiffs' rights as parents violated Plaintiffs' substantive due process rights under the First and Fourteenth Amendment of the United States Constitution and Article 1 of the New Jersey State Constitution;

4

>   (5) that Defendants' denial of Joseph Norman's right to live with his children and to have unsupervised contact with his children absent a *pre*-deprivation hearing violated his procedural due process rights under the Fourteenth Amendment of the United States Constitution and Article 1 of the New Jersey State Constitution;
>
>   (6) that Defendants' denial of Joseph Norman's right to live with his children and to have unsupervised contact with his children absent a *post*-deprivation hearing violated his procedural due process rights under the Fourteenth Amendment of the United States Constitution and Article 1 of the New Jersey State Constitution; and
>
>   (7) that Defendants' engaging in a judicial function reserved to the Family Part of the Chancery Division of the New Jersey Superior Court violated the Separation of Powers Clause of the New Jersey Constitution.

(*See* ECF Nos. 41, 70.)[1]  Plaintiffs seek a declaratory judgment declaring that N.J. Code § 10A:71-6.12(e) violates Plaintiffs' substantive and procedural due process rights and injunctive relief enjoining the Defendants from enforcing the regulation against Plaintiffs.  (*See* ECF No. 41.)

On April 5, 2021, Defendants filed the first of the motions for summary judgment that are before this Court.   (ECF No. 78.)   Defendants' motion for summary judgment raises four arguments:

>   (1) this Court should dismiss Plaintiffs' due process claims as moot because the Board granted Joseph Norman permission to reside with his children;
>
>   (2) this Court should dismiss Plaintiffs' claim for prospective injunctive relief because Plaintiffs lack standing to bring this claim;
>
>   (3) this Court should dismiss Plaintiffs' claims for declaratory relief because a declaratory judgment ordaining past conduct does not present a case or controversy; and
>
>   (4) this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law separation of powers claim, or, alternatively, dismiss the claim because the Board is authorized to restrict a sex offender's contact with children.

---

[1] As discussed below, the Court construes the Complaint as alleging not only that Defendants' conduct violates due process, but also that the no-minor-contact regulation itself, N.J. Code § 10A:71-6.12(e), violates due process on its face.

(Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., ECF No. 78-1, at i–ii.)

Thereafter, Plaintiffs responded with their own cross-motion for summary judgment, which is also presently before this Court. (ECF No. 79.) Plaintiffs' cross-motion for summary judgment raises three arguments:

> (1) the authority of the New Jersey State Parole Board does not extend to intervention in the parent/child relations of parolees;
> (2) N.J. Code § 10A:71-6.12(e) unconstitutionally abridges the fundamental rights of parents; and
> (3) N.J. Code § 10A:71-6.12(e) violates Plaintiffs' procedural due process protections under the U.S. and New Jersey Constitution.

(Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., ECF No. 79-4, at 2.)[2]

Defendants and Plaintiffs have submitted briefs in opposition, (*see* ECF Nos. 81–82), and Defendants have also submitted a reply brief. (ECF No. 83.) Accordingly, briefing is complete, and this matter is ripe for determination.

### III. LEGAL STANDARDS

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue. *Anderson v. Liberty*

---

[2] The Court construes Plaintiffs' first argument as asserting that this Court should grant summary judgment in favor of Plaintiffs' separation of powers claim because, as Plaintiffs contend, the Board does not have authority to intervene in the parent/child relations of parolees as the Legislature has reserved that authority to the Judiciary. In addition, the Court construes Plaintiffs' second and third argument as asserting that this Court should grant summary judgment in favor of Plaintiffs on their substantive due process claims regarding the Defendants' conduct and the constitutionality of the no-minor-contact condition, N.J. Code § 10A:71-6.12(e), on its face.

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden. *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatte v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

## IV. <u>ANALYSIS</u>

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. § 10:6-1 to 10:6-2 (the "NJCRA").[3] (*See* ECF No. 41, at 2.) To prevail on a claim

---

[3] "Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart," Section 1983. *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3

for relief under Section 1983, a plaintiff must demonstrate the violation of a right under the Constitution or laws of the United States[4] by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

Here, Plaintiffs assert substantive and procedural due process violations under the Fourteenth Amendment[5] of the United States Constitution and Article I of the New Jersey Constitution against the New Jersey State Parole Board,[6] Senior Parole Officer Thawra Naser and Lt. Julienne Sirico, and "John and Jane Does" seeking injunctive and declaratory relief only. (*See* ECF No. 41, at 1–4; ECF No. 70.) Plaintiffs also assert a separation of powers claim against the Defendants under the New Jersey Constitution. (ECF No. 41, at 2.) As Plaintiffs' claims against employees of the Board involve a "person acting under color of state law,"[7] and Defendants do not

---

(D.N.J. Aug. 25, 2009). Accordingly, the Court will analyze Plaintiffs' NJCRA claims "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 417, 444 (D.N.J. 2011).

[4] The NJCRA additionally provides a cause of action for a violation of a right under the New Jersey Constitution or New Jersey law. *See* N.J. Stat. § 10:6-2(c).

[5] Although Plaintiffs also refer to substantive due process rights under the First Amendment, the Court construes the Complaint as merely alleging a Fourteenth Amendment due process violation.

[6] As the New Jersey State Parole Board is not a "person" subject to liability under Section 1983 or the NJCRA, the Court will dismiss Plaintiffs' claims against it with prejudice. *See Thrower v. New Jersey State Parole Bd.*, 438 F. App'x 71 ,72 (3d Cir. 2011); *Madden v. New Jersey State Parole Board*, 438 F.2d 1189, 1190 (3d Cir. 1971); *Niblack v. New Jersey State Parole Bd.*, No. 17-1977, 2017 WL 2106128, at * 2 (D.N.J. May 15, 2017). The dismissal is with prejudice because any attempt to amend the Complaint against the New Jersey State Parole Board would be futile. *See Edwards v. Lindenwold Police Department*, No. 21-13076, 2021 WL 3115809, at *4 (D.N.J. July 22, 2021).

[7] A state official in his or her official capacity, when sued for injunctive relief, is a person under Section 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Moreover, employees of state agencies act under color of state law when they act within their position defined by state law. *West v. Atkins*, 487 U.S. 42, 49 (1988).

assert otherwise, the only question that remains pertaining to the merits of Plaintiffs' claims is whether Defendants violated Plaintiffs' rights.

Defendants' motion for summary judgment, however, challenges the Court's authority to hear Plaintiffs' claims. As Defendants' arguments implicate jurisdictional concerns, the Court first reviews Defendants' arguments regarding standing, mootness, the availability of declaratory relief, and supplemental jurisdiction. For the reasons explained below, the Court finds that Defendants fail to demonstrate that Plaintiffs lack standing or that the Defendants' actions have mooted Plaintiffs' claims. The Court further finds that Defendants fail to demonstrate that they are entitled to summary judgment as to Plaintiffs' separation of powers claim.

The Court then reviews the federal and state rights upon which Plaintiffs' claims are based and assesses whether Defendants violated these rights. As explained below, the Court concludes that Plaintiffs fail to demonstrate that they are entitled to summary judgment on their separation of powers claim and fail to demonstrate the absence of material issues of genuine fact regarding their remaining claims, and, therefore, summary judgment in their favor is not appropriate.

**A. Standing**

The Court first considers Defendants' argument that Plaintiffs lack standing to bring their claims for prospective injunctive relief. The Court will deny summary judgment on this ground because Defendants have not demonstrated that, at the time Plaintiffs commenced this lawsuit, Plaintiffs lacked standing to seek prospective injunctive relief.

"Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "Though federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to resolving 'Cases' and 'Controversies.'" *Hamilton v. Bromley*, 862

F.3d 329, 334 (3d Cir. 2017).   Courts enforce this case-or-controversy limitation "through the several justiciability doctrines . . . including 'standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.'" *Id.* at 334–35.   "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis*, 824 F.3d at 346.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.*   "Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.*   "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

Whereas here, a plaintiff seeks prospective relief, "the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).   The threat of injury must be real and immediate. *See Chavis v. United States*, 597 F. App'x 38, 42 (3d Cir. 2014).   "[T]he fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages . . . does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995).

Critically, "standing is to be determined as of the commencement of suit." *Lujan*, 504 U.S. at 570 n.5; *see Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) ("Standing ensures that each plaintiff has '[t]he requisite personal interest

. . . *at the commencement of the litigation* . . ..") (emphasis added).   Events occurring after the commencement of suit, therefore, are not relevant to the issue of standing.  *See Lujan*, 504 U.S. at 570 n.5.

Defendants argue that because the Board granted Joseph Norman permission to reside with his children on July 18, 2019, Plaintiff must "'establish a real and immediate threat' that Joseph Norman would again be subject to the Board's conditions related to his contact and residing with his children" in order to have standing to seek prospective injunctive relief.  (*See* ECF No. 78-1, at 11–12.)   Defendants further contend that Plaintiff does not have standing because "there is simply no indication of any 'real and immediate' threat that Joseph Norman will be injured by the Board's actions that he seeks to have enjoined."  (*Id.* at 12.)

Defendants' argument misses the mark because the relevant period to assess Plaintiffs' standing is at the commencement of the lawsuit.  *See Lujan*, 504 U.S. at 570 n.5.  For example, Defendants' briefing does not argue that Plaintiffs lacked a real and immediate threat of future injury when Plaintiffs filed their Complaint in 2017.  (*See* ECF No. 78-1, at 11–12.)  Instead, Defendants' briefing merely asserts that because the Board granted Joseph Norman's request to reside with his children in 2019, he cannot demonstrate standing unless he establishes that the Board would again subject him to the PSL conditions.  (*See id.*)  However, the Board's subsequent decision to grant Joseph Norman permission to reside with his children in 2019 is irrelevant as to whether Plaintiffs have standing to bring their lawsuit.  *See Lujan*, 504 U.S. at 570 n.5.  Accordingly, Defendants fail to persuade this Court that Plaintiffs lacked standing at the commencement of the lawsuit.

Moreover, the Court is satisfied that Plaintiffs have shown that, at the commencement of the lawsuit, they faced a real and immediate threat of the Board interfering with their parental

rights. When Plaintiffs filed the Complaint, the Board was continuing to enforce the no-minor-contact condition. (*See* ECF No. 79-3 ¶ 35; ECF No. 81-1 ¶ 35.) In fact, just a month before, parole officers had taken Joseph into custody because he was alone with one of his sons while he assisted Helen move into a new apartment. (*See, e.g.*, ECF No. 41 ¶ 149.) Accordingly, Plaintiffs faced a real and immediate threat to their parental rights at the time that they filed the Complaint, and the Court will deny Defendants' motion on this ground.

### B. Mootness

Next, the Court considers Defendants' argument that Plaintiffs' claims are moot to the extent that they seek an injunction permitting Joseph to reside with his minor children. (*See* ECF No. 78-1, at 24–26.) For the reasons below, the Court declines to grant summary judgment on this point in favor of Defendants because Defendants have not demonstrated that it is "absolutely clear" that their allegedly wrongful behavior is not reasonably expected to recur.

Standing and mootness are distinct justiciability doctrines. *Freedom from Religion Found., Inc.*, 832 F.3d at 475. Whereas "[s]tanding ensures that each plaintiff has '[t]he requisite personal interest . . . at the commencement of the litigation,' . . . mootness ensures that this interest 'continue[s] throughout' the duration of the case." *Id.* at 476.

As Defendants correctly note, generally, a case is moot when: (1) the specific alleged violation at issue has ceased and it is not reasonably likely that it will occur again; and (2) other interim relief or events eliminated the effects of the alleged violation. *N.J. Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30–31 (3d Cir. 1985). However, where a defendant voluntarily ceased the challenged practice, the standard for determining whether the defendant's voluntarily conduct has mooted the case is more stringent: "The party asserting that a claim is moot must show that it is 'absolutely clear that the allegedly wrongful behavior [is] not reasonably [ ] expected to

recur.'" *Freedom from Religion Found., Inc.*, 832 F.3d at 476 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

In the present case, Plaintiffs seek injunctive relief enjoining the Defendants from enforcing the no-minor-contact condition against Plaintiffs with respect to their own children. (*See* ECF No. 41.) On July 18, 2019, however, the Board granted Joseph Norman permission to reside with his children. (ECF No. 78-2, at 52–53.) In addition, in September 2019, the Board granted Joseph Norman permission to live with his then un-born daughter. (ECF No. 83, at 2.) Thus, the Board voluntarily ceased the challenged practice of preventing Joseph from living with his children, and the case is not moot unless Defendants show that it is "absolutely clear" that the allegedly wrongful behavior is not reasonably expected to recur. *See Freedom from Religion Found., Inc.*, 832 F.3d at 476.

The Court finds that Defendants fail to demonstrate that it is "absolutely clear" that Defendants' challenged practice of preventing Joseph Norman from living with his children is not reasonably expected to recur. Defendants' sole argument in their brief in support of their motion for summary judgment regarding mootness is that "[b]ecause the Board has granted Joseph Norman permission to reside with his minor children, . . . Plaintiff's request for injunctive relief [is] moot because [the Court] can [no] longer grant the relief requested." (ECF No. 78-1, at 11.) However, this argument does not address whether the conduct at issue may be reasonably expected to recur, and this Court is certainly capable of enjoining Defendants from arbitrarily enforcing the no-minor-contact provision in the future.

In reply to Plaintiffs' opposition, Defendants add that "[t]he mere fact that Joseph Norman, due to his PSL status, remains subject to PSL conditions, including the condition related to his

LWC privileges, does not . . . defeat a claim of mootness." (ECF No. 83, at 1–2.)  However, Defendants cite no case law or provide any other support for this proposition.  (*See id.*)

Elsewhere in Defendants' briefing, Defendants set forth arguments that are relevant to the issue of mootness.  For example, in addressing standing, Defendants argue that there is no ongoing threat of injury to Plaintiff and any claim to the contrary is merely conjectural.  (ECF No. 78-1, at 12.)  Defendants contend that, although the Board could theoretically rescind Joseph's LWC privileges for cause, to do so, Joseph would first have to commit an act or engage in behavior which would provide cause for the Board to reimpose the condition.  (*Id.*)  Furthermore, in Defendants' opposition, Defendants argue that "the factual record and the law refute" Plaintiffs' claim "that the Board could rescind Joseph's LWC privileges for non-compliance with any of his parole conditions, irrespective of whether that non-compliance poses a risk of harm to Helen Norman or their children." (ECF No. 81, at 4.)  Properly supported, these arguments could suggest that the Defendants' recission of Joseph's LWC privileges is unlikely.

Defendants, however, fail to sufficiently support these arguments to demonstrate that it is "absolutely clear" that Defendants' challenged practice of preventing Joseph Norman from living with his children is not reasonably expected to recur.  For example, Defendants fail to cite any evidence suggesting that the Defendants could and would rescind Joseph's LWC privileges only if non-compliance with his parole conditions poses a risk of harm to his children.  Defendants point to the Board's July 18, 2019 decision granting LWC privileges to Joseph, contending that the decision "provides that any decision to rescind Joseph Norman's LWC privileges in the future would have to be based on *cause*, meaning sufficient facts and circumstances supporting a decision to rescind (*i.e.*, engaging in behavior that harms the children or places them in potential danger)." (*Id.*)  But nothing in the Board's July 18, 2019 decision indicates that only behavior that harms the

children or places them in potential danger could provide sufficient cause to support a decision to rescind Joseph's LWC privileges. (*See* ECF No. 78-2, at 52–53.) The decision merely states that "the Division of Parole has the authority to rescind your LWC approval based on cause," without elaborating on what constitutes cause. (*See id.*) In addition, Defendants also point to the regulations governing the Board, contending that any response must be "proportional to the risk to the community posed by the parolee" and "the severity of the violation." (ECF No. 81, at 4.) Those proportionality requirements, however, do not limit the Defendants' ability to rescind Joseph's LWC privileges to those instances where a violation poses a risk of harm to his children. *See* N.J. Code § 10A:72-2.4(b).

Moreover, Defendants fail to demonstrate that they would follow the Board's decision or the governing regulations as Defendants interpret them in responding to violations of conditions of parole. In fact, the record suggests that the Defendants previously took Joseph into custody and the Board revoked his parole for violating the no-minor-contact provision, among other things, after Joseph spent time alone with one of his sons without making any sort of inquiry into whether this non-compliance posed a risk of harm to the child. (*See* Exs. for Third Am. Compl. Ex. W, ECF No. 41-2, at 25.) Nor does the record suggest that any sort of risk of harm actually existed to Joseph's son on that occasion. For example, the uncontested psychological evaluations that Joseph submitted to support his LWC applications indicate that Joseph identifies himself as "strictly heterosexual" and concludes that Joseph's recidivism risk level is low and that he has no history of abusing young children, sexually or otherwise. (*See* ECF No. 79-2 ¶ 25; ECF No. 81-1 ¶ 25.)

Accordingly, Defendants fail to carry their "stringent" burden of demonstrating that it is "absolutely clear" that Defendants' challenged practice of preventing Joseph Norman from living with or contacting his children is not reasonably expected to recur. *See Freedom from Religion*

*Found., Inc.*, 832 F.3d at 476.  The Court, therefore, will deny summary judgment on Defendants' mootness arguments.

### C.  Declaratory relief

Defendants further argue that Plaintiffs' remaining claims for declaratory relief do not present a justiciable issue because they seek to adjudicate the constitutionality of Defendants' past conduct.  For the reasons below, the Court declines to grant Defendants' summary judgment on this ground.

The case or controversy requirement noted above must be met regardless of the type of relief sought, including declaratory relief.  *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992).  To satisfy the case or controversy requirement, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  *Martin v. Keitel*, 205 F. App'x 925, 928 (3d Cir. 2006).  A claim seeking a "declaration that defendants violated" an individual's "constitutional rights in the past" does not present a justiciable case or controversy.  *Id.*

Here, Defendants argue that Plaintiffs' claims for declaratory relief do not present a justiciable case or controversy because "it seeks to adjudicate the constitutionality of the Defendants' past conduct." (ECF No. 78-1, at 14.)  However, the Court finds that Plaintiffs' claims for declaratory judgment do not seek to adjudicate solely the constitutionality of the Defendants' past conduct.  As noted above, Plaintiffs allege facts from which it appears that, at the time they filed the Complaint, there was a substantial likelihood that they would suffer injury in the future.  For example, at the time that they filed the Complaint in 2017, the Board was continuing to enforce the no-minor-contact condition against Joseph with respect to his children.  (*See* ECF No. 41 ¶¶

122–140.)  Therefore, Plaintiffs have standing to assert their claims for declaratory relief.  *Martin*, 205 F. App'x at 928.

Likewise, Defendants fail to demonstrate that Plaintiffs' claims for declaratory relief have become moot.  As noted above, where, like here, a defendant voluntarily ceased the challenged practice, "[t]he party asserting that a claim is moot must show that it is 'absolutely clear that the allegedly wrongful behavior [is] not reasonably [ ] expected to recur.'"  *Freedom from Religion Found., Inc.*, 832 F.3d at 476 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  For the reasons set forth above, Defendants have not met their burden of demonstrating that the allegedly wrongful behavior is not reasonably expected to recur. (*Id.*)  Accordingly, the Court denies summary judgment in favor of Defendants on this ground.

### D.  Separation of Powers Claim

Both parties move this Court for summary judgment with respect to Plaintiffs' separation of powers claim.  As detailed below, the Court finds that neither Defendants nor Plaintiffs demonstrate that they are entitled to summary judgment on this ground.

As an initial matter, Defendants submit that this Court should decline to exercise supplemental jurisdiction because Plaintiffs' federal claims are no longer viable.  (*See* ECF No. 78-1, at 15.)  However, as the Court declines to grant Defendants' motion for summary judgment on Plaintiffs' federal claims, those claims remain viable.  Accordingly, the Court will exercise supplemental jurisdiction over Plaintiffs' state law claims.

Defendants also contend that this Court should dismiss Plaintiffs' separation of powers claim because, according to Defendants, "New Jersey courts have previously considered and rejected this exact claim."  (*See* ECF No. 78-1, at 16.)  In support of this proposition, Defendants point to one decision only, *State v. Bond*, 839 A.2d 888, 894 (N.J. Supp. Ct. 2003).

In *Bond*, the defendant pled guilty to second-degree sexual assault and second-degree endangering the welfare of a child. *Id.* at 890. The court sentenced him to a five-year term at the Adult Diagnostic and Treatment Center and community supervision for life ("CSL") under N.J. Stat. § 2C:43-6.4, the predecessor to the PSL statute. *Id.*

Six and a half months after placement on Parole, the defendant was indicted for violating the conditions of CSL. *Id.* The defendant appealed from a judgment convicting him of violating the conditions of CSL. *Id.*

On appeal, the defendant argued that the Parole Board's promulgation of CSL conditions as set forth in N.J. Code § 10A:71-6.11 violated the separation of powers doctrine because, he alleged, the Legislature had not delegated any specific governmental agency the authority to promulgate the conditions of CSL. *Id.* at 894. In rejecting this argument, the Appellate Division determined that the Legislature's use of the language "shall be supervised as if on parole" in the CSL statute "can be reasonably viewed as enabling the executive branch to promulgate rules and regulations to further this purpose." *Id.* at 895.

Plaintiffs assert that Defendants' reliance on *Bond* does not support their argument. (ECF No. 82-1, at 6.) Whereas in *Bond* the defendant challenged the entirety of the Legislature's delegation of general authority to the Parole Board to draft conditions of supervision, here, according to Plaintiffs, their challenge is not to the Defendants' general authority to draft conditions of supervision, or even the Defendants' authority to regulate PSL parolee's interactions with minor children generally, but rather to the Defendants' authority to regulate a parolee's interactions with his or her own children. (*Id.* at 6–7.)

The Court agrees with Plaintiffs that *Bond* is distinguishable from the instant case. Unlike the defendant in *Bond*, here, Plaintiffs challenge the Defendants' authority to regulate a parolee's

interactions with his or her own child when, according to Plaintiff, the New Jersey Legislature delegated the sole authority to adjudicate matters involving controversies affecting families and the health and welfare of the children in those families to the Family Court. Without any additional support for Defendants' contention that the Board has authority under the circumstances to promulgate and enforce the conditions at issue, Defendants fail to demonstrate to this Court that they are entitled to judgment as a matter of law. Therefore, this Court will deny Defendants' motion for summary judgment on this ground.

Plaintiffs also move for summary judgment on their separation of powers claim. Plaintiffs submit that the Defendants violated the Separation of Powers Clause of the New Jersey Constitution by engaging in a judicial function reserved under the New Jersey Constitution, New Jersey Statutes, and New Jersey Rules of the Court for the Family Court of the Chancery Division of the New Jersey Superior Court. (ECF No. 79-4, at 13–19.)[8]

Specifically, Plaintiffs contend that Title Nine and Title Thirty of the New Jersey Statutes confer to the Family Court of the Chancery Division exclusive statutory authority for restricting the right of a parent to raise their child. (*Id.* at 18.) In support of this argument, Plaintiffs point to N.J. Stat. §§ 9:6-8.22, -8.24. (*Id.*) Those sections provide that "[n]otwithstanding any other law to the contrary, the Superior Court, Chancery Division, Family Part has exclusive original jurisdiction over noncriminal proceedings under this act alleging the abuse or neglect of a child,"

---

[8] To the extent that Plaintiffs argue that the Defendants engaged in acts that conflict with the Department of Children and Families and Division of Child Protection and Permanency, such acts cannot constitute a violation of the separation of powers clause because the Board, its employees, the Department of Children and Families, and the Division of Child Protection and Permanency are all part of the executive branch of government. *See State v. Bond*, 839 A.2d 888 (N.J. Super. App. Div. 2003) (noting that "[o]nly when the challenged statute impairs the integrity among the branches should the [separation of powers] doctrine's effect on a branch's constitutional limits be recognized"). Accordingly, the analysis below focuses solely on Plaintiffs' arguments regarding the Family Court.

§ 9:6-8.24, and that "[a]ll noncriminal cases involving child abuse shall be commenced in or transferred to this court from other courts as they are made known to the other courts." § 9:6-8.22. of government." *State v. Bond*, 839 A.2d 888 (N.J. Super. App. Div. 2003).

The Court finds that Plaintiffs fail to demonstrate that they are entitled to judgment as a matter of law. Specifically, Plaintiffs have not established that the Defendants engaged in any act that the Legislature reserved to the Family Court. Sections 9:6-8.22 and -8.24 provide exclusive jurisdiction to the Family Court over only "noncriminal proceedings." *See* N.J. Stat. §§ 9:6-8.22, -8.24. The PSL enabling statute and implementing regulations, however, authorize and implement conditions on parolees, including the condition challenged by Plaintiffs, only in criminal cases, *see* N.J. Stat. §2C:43-6.4(a) (authorizing parole supervision for life for persons convicted of certain enumerated crimes); N.J. Code § 10A:71-6.12(a) (implementing parole supervision for life for persons convicted of certain enumerated crimes). Plaintiffs otherwise fail to show how the Defendants' promulgation or application of the no-minor-contact condition constitutes "noncriminal proceedings" such that Sections 9:6-8.22 and -8.24 would apply. Accordingly, the Court declines to grant summary judgment in favor of either Defendants or Plaintiffs with respect to Plaintiffs' separation of powers claims.

### E.  Due Process Claims

Plaintiffs also move for summary judgment on their due process claims. As explained below, the Court declines to grant summary judgment on Plaintiffs' due process claims because Plaintiffs fail to demonstrate the lack of genuine issues of material fact.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, and contains both substantive and procedural components. *See Steele v. Cicchi*, 855 F.3d 494, 501 (3d

Cir. 2017).   Article I of the New Jersey Constitution provides similar protections.   *See State v. Njango*, 255 A.3d 1164, 1173 (N.J. 2021).

Plaintiffs claim that N.J. Code § 10A:71-6.12(e) and Defendants' conduct violate their substantive and procedural rights.   The Court addresses each argument in turn.[9]

### 1.   Substantive Due Process

Substantive due process limits what government may do regardless of the fairness of procedures that it employs.   *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000).   It does so to "guarantee protect[ion] against government power arbitrarily and oppressively exercised."   *Steele*, 855 F.3d at 501.

The applicable standard for a substantive due process claim depends on whether the scrutinized government act is legislative or executive in nature.   *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000). "Executive acts . . . typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society."   *Nicholas*, 227 F.3d at 139 n.1.

---

[9] The Court need not address separately Plaintiffs' due process claims under the New Jersey Constitution because "[t]he New Jersey Supreme Court has chosen to apply the same standards developed by the United Supreme Court under the federal Constitution for resolving due process claims under the New Jersey Constitution."   *State Farm Mut. Auto, Ins. Co. v. State*, 590 A.2d 191, 198 (N.J. 1991).

Moreover, the Court need not give much consideration to Plaintiffs' facial challenge to N.J. Code § 10A:71-6.12(e) because Plaintiffs do not even contend that the condition "is unconstitutional in all of its applications."   *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011).   In fact, Plaintiffs concede that the no-minor-contact provision is constitutional as it applies to parolees without children of their own. (*See* ECF No. 79-4, at 25.)  Accordingly, the Court declines to grant summary judgment in favor of Plaintiffs on their facial challenge of N.J. Code § 10A:71-6.12(e).

Where the challenged government act is executive in nature, the act will withstand a due process challenge unless the plaintiff demonstrates that the executive action violates a fundamental right and is "so ill-conceived or malicious that it shocks the conscience." *Id.* But where the challenged government act is legislative in nature, the legislative act generally[10] will withstand a due process challenge unless the plaintiff demonstrates that the government lacked a legitimate state interest from which the legislature could rationally conclude was served by the legislative act. *Id.*

Here, the challenged government conduct is the parole officers' application of the no-minor-contact condition to restrict Joseph Norman from unsupervised contact with his children. This conduct is executive in nature because employees of the Board, an agency in the Executive Branch, carry it out, and the conduct applies to a limited number of persons, namely Plaintiffs and, at most, other parolees subject to N.J. Code § 10A:71-6.12(e) who have children of their own. *Nicholas*, 227 F.3d at 139 n.1. Accordingly, the "shocks the conscience" standard applies to Plaintiffs' substantive due process challenge. *Steele*, 855 F.3d at 502.

"'[T]he exact degree of wrongfulness necessary to reach the "conscience-shocking" level' will 'depend[] upon the circumstances of a particular case,' and may range from 'deliberate indifference' to 'actual intent to cause harm.'" *Id.* at 502–03. Although no court in the Third Circuit has considered whether the alleged conduct at issue reaches "conscience-shocking" levels under the circumstances of the instant case, the Third Circuit Court of Appeals has provided some guidance regarding whether similar conduct shocks the conscience in the context of a suit against a state's child services agency.

---

[10] Where fundamental rights or interests are involved, legislative limitations on such rights are permissible only if they are narrowly tailored to achieve compelling government interests. *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997).

In *Croft v. Westmoreland County Children & Youth Services*, a social worker threatened to remove a child from the home if the father did not leave the household notwithstanding the lack of any concrete evidence that the child was in danger from her father. 103 F.3d 1123, 1124 (3d Cir. 1997). The parents sued the social worker, child services agency, and county, alleging that the defendants had impermissibly interfered with their parental rights under the Fourteenth Amendment. *Id.* at 1125. In reversing the trial court's entry of summary judgment against the parents, the Third Circuit Court of Appeals determined that defendants lacked an "objectively reasonable suspicion of abuse" justifying the forced separation of the father from his child. *Id.* at 1126. Absent such reasonable grounds, the Third Circuit held, "a state has no interest in protecting children from their parents," and "governmental intrusions of this type are arbitrary abuses of power" that violate due process. *Id.*

Post-*Lewis*, courts in the Third Circuit adopted the standard set forth in *Croft* for determining the degree of wrongfulness that "shocks the conscience" in assessing substantive due process claims based on parental rights against child service agencies. *See, e.g.*, *Silva v. Berks Cty. Children & Youth Servs.*, No. 14-199, 2014 WL 4678251 (E.D. Pa. Sept. 18, 2014); *Bower v. Lawrence Cty. Children & Youth Servs.*, 964 F. Supp. 2d 475, 486 (W.D. Pa. 2013); *Crawford v. Washington Cty. Children & Youth Servs.*, No. 06-CV-1698, 2008 WL 239454 (W.D. Pa. Jan. 29, 2008). Under these cases, the separation of a parent and a child absent an individualized inquiry into the child abuse claims shocks the conscience and violates due process. *See Silva*, 2014 WL 4678251, at *4.

Furthermore, Courts in the Second Circuit have applied a similar standard for assessing substantive due process claims in circumstances nearly identical to the instance case, *i.e.*, in the context of parole or supervised release conditions restricting the parental rights of parolees. In the

Second Circuit, "[a]bsent an individualized inquiry into whether [the parent's] sexual proclivities pose a threat to his [child] . . . the imposition of a harsh condition of supervised release that either prohibits interaction with his children or makes such interaction subject to supervision by a person approved of by the probation officer violates [the parent's] due process rights." *United States v. McGeoch*, 546 F. App'x 44, 49 (2d Cir. 2013); *Doe v. Lima*, 270 F. Supp.3d 684, 703 (S.D.N.Y. 2017).

The Court agrees, in part,[11] with the Second Circuit and determines that a similar test is appropriate here in assessing whether Defendants' conduct violates due process.  Thus, where parole officials apply the no-minor-contact condition, N.J. Code § 10A:71-6.12(e), to prohibit a parolee's interaction with his or her own children or makes such interaction subject to supervision without any individualized inquiry and an objectively reasonable suspicion that the parolee poses a threat to the child, the parole officers' conduct shocks the conscience and violates the parolee's substantive due process rights.

Having determined the appropriate standard to analyze Plaintiffs' substantive due process claims, the Court must now determine whether Plaintiffs are entitled to summary judgment. Plaintiffs contend that they have a fundamental liberty interest in the care, custody, and control of their children. (ECF No. 79-4, at 19.)  The Court agrees.  As Plaintiffs correctly point out, "[t]he liberty interest at issue in this case – the interests of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by th[e Supreme] Court." (*Id.* (citing *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000)).  Moreover,

---

[11] This Court is unable to reconcile the Second Circuit's application of strict scrutiny rather than the "shocks the conscience" test in cases involving non-legislative acts with the Supreme Court's decision in *Lewis*. *See McGeoch*, 546 F. App'x at 48 (applying strict scrutiny to analyze plaintiff's claims that the sentencing court's imposition of a condition of supervised release that prevented plaintiff from seeing his children without supervision violated plaintiff's substantive due process rights).

although parolees do not enjoy the full panoply of rights and privileges according by the Constitution, *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), they do maintain the right to raise their children, generally. *See United States v. Loy*, 237 F.3d 251, 269–70 (3d Cir. 2001).

Plaintiffs further contend that, given the fundamental nature of their right to raise their children, the Court should apply strict scrutiny in analyzing any restriction on that right. (*See* ECF No. 79-4, at 22.)  The Court declines to apply strict scrutiny in analyzing Plaintiffs' substantive due process claim because, as discussed above, the appropriate test to analyze non-legislative government conduct is the "shocks the conscience" standard. *See Lewis*, 523 U.S. at 846; *Nicholas*, 227 F.3d at 142. Accordingly, Plaintiffs' substantive due process claim will fail unless Plaintiffs demonstrate that Defendants failed to conduct an individualized inquiry and lacked an objectively reasonable suspicion that Joseph Norman posed a threat to his children. *See Croft*, 103 F.3d at 1126; *Silva*, 2014 WL 4678251, at *4.

The Court finds that Plaintiffs fail to demonstrate the lack of genuine issues of material fact as to what Defendants Naser and Sirico knew or did not know regarding whether Joseph Norman posed a threat to his children.  Although Plaintiffs argue in their briefing that they presented uncontroverted evidence suggesting that Joseph does not pose a risk to his children, (*see* ECF No. 79-4, at 25), they fail to demonstrate that Defendants Naser and Sirico were aware of the contents of this evidence or that they otherwise lacked an objectively reasonable suspicion that Joseph Norman posed a threat to his children.  Accordingly, Plaintiffs fail to demonstrate a lack of genuine issue of material fact, and the Court will deny summary judgment as to Plaintiffs' substantive due process claim.

## 2.  Procedural Due Process

Finally, the Court considers Plaintiffs' procedural due process claims.  The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. *Washington v. Lehigh Cty. Dist. Attorney's Office*, ___ F. Supp. 3d ___ (E.D. Pa. 2021).  To prevail on a procedural due process claim, a plaintiff must show that: (1) Defendants deprived him of an individual liberty interest that the Fourteenth Amendment encompasses; and (2) the procedures Defendants made available to him did not provide due process of law. *Steele*, 855 F.3d at 507.  As discussed above, Defendants' conduct interfered with Plaintiffs' protected liberty interest in the care, custody, and control of their children.  Accordingly, the only issue remaining is whether the procedures Defendants employed satisfied due process.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972).  To determine whether a statute satisfies procedural due process, the court should balance the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards; and (4) the government's interest, including the fiscal and administrative burden that the additional or substitute procedures would entail. *See Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

Here, Plaintiffs argue that Defendants violated their procedural due process rights by failing to provide Joseph a hearing and other protections prior to depriving him of unsupervised contact with his children and the right to live with them.  (ECF No. 79-3, at 28.)  Moreover, Plaintiffs contend that the post-deprivation options that Defendants provided Plaintiffs do not adequately protect Plaintiffs' fundamental rights.  (*Id.*)

Defendants counter that the pre-deprivation procedure that Joseph's underlying trial and conviction for a crime involving his sexual assault of a minor served as a sufficient procedural safeguard for his protected liberty interests. (*See* ECF No. 81, at 3.)  Regarding post-deprivation due process, Defendants argue that Plaintiffs were afforded the process due them when they applied for LWC privileges. (*Id.*)

Although the Court rejects Defendants' contention that Joseph's underlying trial and conviction for a crime of which the victim was not his own child could, by itself, provide the type of individualized inquiry and procedural protections that due process requires, *see Lima*, 270 F. Supp.3d at 703, the Court nonetheless finds that Plaintiffs fail to demonstrate the lack of genuine issues of material fact regarding the pre- and post-deprivation procedures that Defendants did or did not employ.  Critically, Plaintiffs' statement of material facts fails to set forth the pre- and post-deprivation procedures that Defendants did or did not employ.  *See* Local Ct. R. 56.1(a).  Moreover, Plaintiffs' briefing fails to otherwise support Plaintiffs' assertions regarding the nature of the procedures Defendants employed by citing to parts of the materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(a).[12]  Accordingly, summary judgment is not appropriate, and the Court will deny Plaintiffs' motion on their procedural due process claims.

---

[12] While courts must liberally construe the pleadings and the complaints of *pro se* plaintiffs, *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), *pro se* plaintiffs must follow the rules of procedure and the substantive law, *see McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (stating that *pro se* status is not a license to disregard procedural rule or substantive law).

## V.     CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' and Defendants' motions for summary judgment in all respects.  An appropriate Order follows.

JULIEN XAVIER NEALS
United States District Judge