UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HELEN E. NORMAN and JOSEPH J. NORMAN, <br><br> Plaintiffs, <br><br> v. <br><br> NEW JERSEY STATE PAROLE BOARD, *et. al.*, <br><br> Defendants. | Civil Action No.: 17-4413 (JXN) (MAH) <br><br> **OPINION** |

**NEALS**, District Judge

Plaintiffs Helen E. Norman and Joseph J. Norman (collectively "Plaintiffs") are proceeding with a civil rights complaint pursuant to 42 U.S.C. § 1983 and state law. (Fourth Am. Compl., ECF No. 92.) Presently before the Court are Defendants'[1] motion for summary judgment (ECF No. 116), Plaintiffs' response (ECF No. 121), and Defendants' reply (ECF No. 122). Also before the Court is Plaintiffs' motion for summary judgment (ECF No. 117), Defendants' response (ECF No. 120), and Plaintiffs' reply (ECF No. 123). For the reasons stated below, Defendants' motion for summary judgment (ECF No. 116) is **GRANTED,** and Plaintiffs' motion for summary judgment (ECF No. 117) is **DENIED as moot**.

### I. FACTUAL BACKGROUND

The Court provided the following detailed factual background in its November 2, 2021 Opinion denying the parties' first motions for summary judgment:[2]

---

[1] Plaintiffs name the Acting Commissioner of the Department of Corrections, Victoria L. Kuhn, and several members of the New Jersey State Parole Board including, Samuel J. Plumeri, Jr., Kerri Cody, Allen DelVento, Robert Goodale, Thomas Haaf, James B. Jefferson, Charlie Jones, Julio Marenco, Robert Riccardella, Ronald L. Slaughter, Trudy M. Steinhardt, Clarence K. Taylor, John Paitakes, Kenneth L. Saunders and Steven T. Yglesias (collectively "Defendants") as defendants in their Fourth Amended Complaint. (*See generally* ECF No. 92.)

[2] The Court has updated the citations in the factual background summary to reflect the proper citations from Plaintiffs' Fourth Amended Complaint and the parties' statements of material facts relevant to the instant motions for summary judgment.

In 2009, [] Joseph Norman [("Joseph") was convicted] of a sex offense against then fourteen-year-old Helen Norman. [ECF No. 116-4 ¶ 2, Defendants' Statement of Material Facts ("DSOMF").] As a result of the offense, Helen became pregnant and bore a child, A.N. [*Id.*]

The sentencing court sentenced Joseph to a term of imprisonment, five years of mandatory parole supervision, and to a term of Parole Supervision for Life ("PSL") pursuant to N.J. Stat. § 2C:43-6.4. [*Id.* ¶ 3.] The PSL implementing regulation requires that Joseph refrain from contacting Helen, *see* NJ. Code § 10A:71-6.12(d)(19) (the "no-victim-contact condition"), and, because she was a minor at the time of the offense, the regulation further requires that Joseph refrain from initiating, establishing, or maintaining contact with any minor, to refrain from attempting to do so, and to refrain from residing with any minor without prior approval of the District Parole Supervisor, *see* § 10A:71-6.12(e) (the "no-minor-contact condition"). [ECF No. 117-2 ¶¶ 4-5, Plaintiffs' Statement of Material Facts ("PSOMF").]

In September 2014, officials released Joseph from custody, and he began serving his PSL term. [DSOMF ¶ 6.]

After Joseph's release, Helen, now an adult, began to reach out to him. [ECF No. 92 ¶ 41] Joseph disregarded the PSL conditions and began seeing Helen and A.N. on a regular basis in the Spring of 2015. [*Id.* ¶ 43.] During this period, Helen became pregnant again and the two had another son, N.N. [*See id.*]

Parole officers subsequently charged Joseph with violating his PSL conditions for contacting Helen. [PSOMF ¶ 7.] The New Jersey State Parole Board (the "Board") found that Joseph had violated his conditions of parole, but it did not recommend revocation. [ECF No. 92 ¶ 47.] Instead, the Board placed him on the Electronic Monitoring Program ("EMP") and released him. [*Id.*]

[]Hoping to see Joseph in person, Helen wrote the Board informing it of her desire to contact Joseph. [PSOMF ¶ 10] Joseph's attorney also formally requested that the Board lift the no-victim-contact condition of Joseph's parole. [ECF No. 92 ¶ 49.]

On August 5, 2016, parole officers made a surprise visit to Joseph's residence and observed the messages to and from Helen on his phone. [*Id.* ¶ 51.] As a result, the officers took Joseph into custody and charged him with violating the no-victim-contact condition of his parole. [*Id.*; PSOMF ¶ 11.] On January 18, 2017, the Board again found that Joseph had violated his conditions of parole but concluded that the violation was not serious enough to warrant revocation. [ECF No. 92 ¶ 53.] Instead, the Board reinstated Joseph onto parole, and subsequently approved holding the no-victim-contact condition in abeyance. [ECF No. 92 ¶¶ 55-56; PSOMF ¶¶ 13.] The no-*minor*-contact condition, however, remained in effect. [ECF No. 92 ¶ 56; PSOMF ¶ 14.]

> In April 2017, Joseph helped Helen and their children move into a new apartment. [ECF No. 92 ¶ 57.] [In May 2017, officers took Joseph into custody for violating his parole, including violation of the no-minor contact conditions, because he had unsupervised contact with his son.] [*Id.* ¶ 60.] [Joseph was also charged with not reporting to his parole officer that he had lost his job, misrepresenting his employment status, and failing to comply with the terms of electronic monitoring.] [*Id.*]
>
> Subsequently, Joseph and Helen filed a formal "Live with Children" request ("LWC") to allow Joseph to live with his two minor children. [PSOMF ¶ 15.] After a couple weeks had passed without a decision from the Board, Joseph and Helen initiated this lawsuit by filing a complaint on June 15, 2017. (*See* Compl., ECF No. 1.)
>
> On October 18, 2017, a panel of the Board found that Joseph had violated the no-minor-contact condition of his parole based in part on his May 2017 statement about contact with his son. [PSOMF ¶ 16.] Accordingly, the panel revoked Joseph's PSL status and ordered him to serve a one-year term of incarceration. [ECF No. 92 ¶ 64.] Approximately one year later, the State released Joseph on parole. [*Id.* ¶ 70.]
>
> On September 26, 2018, the Board denied Joseph's LWC request. [PSOMF ¶ 18.] Thereafter, Joseph submitted a second LWC request to the Board, [DSOMF ¶ 7; PSOMF ¶ 21], but the Board denied this too on March 26, 2019. [DSOMF ¶ 8; PSOMF ¶ 22.]
>
> Joseph appealed from the denial of his second LWC request. [DSOMF ¶ 9; PSOMF ¶ 23.] On July 18, 2019, in response to the appeal, the Board finally granted Joseph's LWC request. [DSOMF ¶ 10; PSOMF ¶ 24.]
>
> The matter did not end there, however, because, in September 2019, Joseph requested permission from his parole officers to reside with his soon-to-be-born daughter, ["C.N."]. [DSOMF ¶ 11; PSOMF ¶ 25.] On September 10, 2019, officers granted the request but noted that "permission can be revoked at any time due to non-compliance with his conditions of supervision." [DSOMF ¶ 12; PSOMF ¶ 26.]

(ECF No. 85 at 1-4.)

In November 2020, Plaintiffs again filed a LWC request, seeking permission for Joseph to reside with their fourth expected child, "S.N." (DSOMF ¶ 13; PSOMF ¶ 27.) The Board granted Plaintiffs' request. (DSOMF ¶ 14.)

3

## II.  RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint in this matter on June 15, 2017. (ECF No. 1.) On June 27, 2019, Plaintiff filed their Third Amended Complaint. (ECF No. 41.) In April 2021, Defendants filed their first motion for summary judgment, and Plaintiffs filed a cross-motion for summary judgment. (ECF Nos. 78 & 79, respectively.) On November 2, 2021, the Court denied both motions for summary judgment, finding: (1) Plaintiffs had standing to bring this lawsuit; (2) Plaintiffs' claims for declaratory and injunctive relief were not moot because at that time Defendants had not demonstrated that it was "absolutely clear" that their allegedly wrongful behavior is not reasonably expected to recur; (3) neither Plaintiffs nor Defendants were entitled to summary judgment with respect to their separation of power claims; and (4) Plaintiffs failed to demonstrate a lack of genuine issue of material issue of fact as to their due process claims. (*See generally* ECF No. 85.)

On March 11, 2022, Plaintiffs filed their Fourth Amended Complaint, the operative complaint in this matter, raising two claims against the Acting Commissioner of the Department of Corrections, Victoria L. Kuhn, and fifteen New Jersey State Parole Board members. (*See generally* ECF No. 92.) Plaintiffs claim the imposition and enforcement of the no-minor contact conditions violate Plaintiffs' substantive due process rights (Count I) and procedural due process rights (Count II) in contravention of the Fourteenth Amended to the United States Constitution and Article I of the New Jersey Constitution. (*See id.*) Plaintiffs seek a declaratory judgment declaring that N.J. Code § 10A:71-6.12(e), the no-minor contact regulation is unconstitutional as applied to Plaintiffs and all parents; injunctive relief enjoining Defendants from enforcing the regulation against Plaintiffs and all parents absent constitutionally adequate procedure; and injunctive relief enjoining Defendants from rescinding Joseph's LWC privileges without adequate procedures. (*Id.* at 18-19.)

4

On March 17, 2023, Defendants filed the instant motion for summary judgment, raising the following four arguments:

(1) Plaintiffs' claim is barred by sovereign immunity and cannot proceed under the *Ex Parte Young* exception because there is no ongoing violation of federal law;

(2) Plaintiffs' due process claims should be dismissed as moot because the board granted Joseph Norman permission to reside with his four children, and the record demonstrates that it is absolutely clear that imposition of the no-contact condition is not reasonably expected to recur;

(3) Defendants are entitled to summary judgment on Plaintiffs' procedural due process claims because Plaintiffs were afforded all of the process they were due; and

(4) Defendants are entitled to summary judgment on Plaintiffs' substantive due process claim because the imposition of the no-contact condition on Joseph Norman was reasonable under the *Turner* test for evaluation parole conditions.

(ECF No. 116-1 at 2-3.)

Thereafter, Plaintiffs filed a motion for summary judgment, which is also presently before the Court, arguing that (1) the no-minor contact conditions invade fundamental rights without being narrowly tailored to a compelling state interest and (2) the LWC protocol unconstitutionally interferes with fundamental rights without sufficient procedural safeguards. (ECF No. 117-1 at 2.)

Defendants and Plaintiffs have submitted briefs in opposition (ECF Nos. 120, 121) and in further support of their respective motions (ECF Nos. 122, 123). Accordingly, the briefing is complete, and this matter is ripe for determination.

### III.   LEGAL STANDARDS

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a

5

reasonable jury could possibly find in the non-movant's favor on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that, as a matter of law, the moving party must prevail or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden. *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate facts that support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatte v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

IV. **ANALYSIS**

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. § 10:6-1 and 10:6-2 (the "NJCRA").[3] Defendants motion for summary judgment

---

[3] "Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart," Section 1983. *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at * 3 (D.N.J. Aug. 25, 2009). Accordingly, the Court will

first challenges the Court's authority to hear Plaintiffs' claims. Defendants argue that Plaintiffs' due process claims should be dismissed as moot because the Board granted Joseph permission to live with his four children, and "the record demonstrates that it is absolutely clear that imposition of the no-contact condition is not reasonably expected to recur." (ECF No. 116-1 at 23-29.) For the reasons explained below, the Court finds that Defendants have demonstrated that their actions have mooted Plaintiffs' claims, and Defendants' motion for summary judgment shall be granted.

Article III's "case or controversy" requirement prevents federal courts from deciding cases that are moot. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (citing *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964)). "The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (quoting *New Jersey Tpk. Auth. v. Jersey Cent. Power*, 772 F.2d 31 (3d Cir. 1985)). "[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Blanciak*, 77 F.3d at 698 (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)), at which point a "federal court lacks jurisdiction to hear it," *Nextel W. Corp. v. Unity Township*, 282 F.3d 257, 261 (3d Cir. 2002).

However, under the voluntary cessation doctrine, a case is not necessarily moot merely because of a defendant's voluntary choice to end an unlawful practice. *United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004). Rather, a defendant's voluntary cessation of allegedly unlawful conduct will only moot a case "if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v.*

---

analyze Plaintiffs' NJCRA claims "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 417, 444 (D.N.J. 2011).

7

*Seattle Sch. Dist.*, 551 U.S. 701, 719 (2007)). The party asserting the mootness bears the "heavy burden of persuasion" that the challenged conduct cannot reasonably be expected to recur. *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)

When reviewing whether a defendant's voluntary cessation of an *allegedly* unlawful activity effectively moots a claim, "the defendant's reason for changing its behavior is often probative of whether it is likely to change its behavior again." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (emphasis added). Courts should be "skeptical" of a voluntary cessation that is done only "in the face of a court order." *Id.* (citing *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)).

Here, Plaintiffs seek injunctive relief enjoining Defendants from enforcing the no-minor contact condition on Joseph absent adequate procedures and enjoining Defendants from rescinding Joseph Norman's LWC privileges without adequate procedures. (*See* ECF No. 92.) As noted above, Defendants have granted Joseph the right to live with his children on three separate occasions since 2019. On July 18, 2019, the Board granted Joseph permission to reside with his two children. (DSOMF ¶ 10; PSOMF ¶ 24.) In September 2019, the Board granted Joseph permission to live with his then-unborn daughter. (DSOMF ¶ 12; PSOMF ¶ 26.) Finally, in November 2020, the Board granted Joseph permission to live with his then-unborn child. (DSOMF ¶ 14.) Defendants argue that based on these grants of Plaintiffs' LWC requests, Plaintiffs' claims have been mooted.

First, the Court considers Defendants reason for changing the challenged behavior. The record does not support a finding that Defendants granted Plaintiffs' LWC request in response to this litigation or in the face of a court order. *Knox*, 567 U.S. 307 (explaining that courts should be "skeptical" of voluntary cessation that is done "in the face of a court order.") Rather, following

8

Plaintiffs' filing of their initial complaint, Defendants denied Plaintiffs' LWC request twice on September 26, 2018, and March 26, 2019. (PSOMF ¶¶ 18, 22.) Additionally, the Board's eventual decision to grant Plaintiffs' LWC request was based on an assessment of Joseph and any threat he may pose to his children. (*See* ECF No. 78-2 at 52-53.) The Board reviewed two Psychosexual and LWC Evaluations and mental health evaluations of Helen Norman and Joseph Norman, all performed by Dr. James Reynolds, which found Joseph's recidivism risk level as low and recommended granting the LWC request. (*Id.* at 52.) The Board also reviewed a mental memorandum from Joseph's Sex Offender Counselor, Mr. Roger, in which Mr. Roger advised that he had no objection to Plaintiffs' LWC request. (*Id.* at 53.) The Board also reviewed two letters from Helen Norman requesting Joseph reside with her and their children. (*Id.* at 52.) Finally, the Board granted the LWC request based on Joseph's "continued compliance with [his] MSV/PSL supervision requirements." (*Id.* at 53.) The Board noted that the Division of Parole has the authority to rescind the LWC approval based "on cause." (*Id.*) Since that time, Defendants have subsequently granted two more LWC requests. These facts do not show that Defendants granted the LWC requests in response to this litigation.

Second, the Court notes that Government defendants are "presumed to act in good faith." *Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 106 (3d Cir. 1992); *see County of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 230-31 (3d Cir. 2021) ("We generally presume that government officials act in good faith, and we will not depart from that practice under these circumstances."); *see also Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (explaining Government officials have an easier time satisfying this test because we presume that they will not resume their challenged conduct unless objective evidence suggests that they have made a bad-faith change to avoid judicial review.) The record does not present facts to show that Defendants have not acted in good faith in granting Plaintiffs' LWC requests.

The Court previously denied summary judgment on this issue, finding that at that time, Defendants failed to sufficiently support their argument that it was "absolutely clear" that Defendants' challenged practice of preventing Joseph from living with his children was not reasonably expected to recur. (ECF No. 85 at 12-16.) Defendants now argue that, as explained above, Joseph's LWC rights were granted after the Parole Board conducted an individualized assessment of Joseph and the potential threat he posed to his children. (ECF No. 116-1 at 27.) Defendants submit they made a "good-faith effort . . . to inquire into the threat, or absence of threat, that Joseph posed to his children." (*Id.* at 28.) Additionally, Defendants have approved two additional LWC applications, allowing Joseph to live with his later-born children. (*Id.*)

The Court notes that in *Federal Bureau of Investigation v. Fikre*, the United States Supreme Court recently addressed the issue of mootness and voluntary cessation of a challenged practice. 601 U.S. 234 (2024). In *Fikre*, the government had placed Fikre on the No Fly List, questioned him about the Portland mosque he attended, and offered to "take steps to remove [him] from the No Fly List" if he became an FBI informant and reported on other members of his religious community. *See id.* at 238. Fikre refused and filed suit, alleging that the government violated his rights to procedural due process by failing to provide either meaningful notice that he was being placed on the No Fly List or any way to secure redress. *Id.* at 238-239. Fikre also argued that the government placed him on the list for "constitutionally impermissible reasons, including his race, national origin, and religious beliefs." *Id.* at 239. Following the filing of Plaintiff's suit, the government removed Plaintiff from the No Fly List and sought dismissal of his suit, arguing that its administrative actions had rendered the case moot. *Id.* The government submitted a declaration asserting that based on the "currently available information," Plaintiff would not be placed on the No Fly List in the future. *Id.* at 240. The Supreme Court found that the case was not moot, explaining that Plaintiff submitted that he was placed on the list for constitutionally impermissible

10

reasons, including his religious beliefs, and the government's assurance that it will not relist Fikre based on "currently available information may mean that his past actions were not enough to warrant his relisting." *Id.* at 242. However, the Supreme Court found that "none of that sp[oke] to whether the government might relist him if he does the same or similar things in the future." *Id.*

This matter is distinguishable from *Fikre* because Plaintiffs here do not argue that Defendants' challenged action of implementing the PSL no contact with minors condition was based on constitutionally impermissible reasons, as it was alleged in *Fikre*. Further, the record is devoid of evidence to otherwise indicate that Defendants' prior actions were based on constitutionally impermissible reasons. Plaintiffs also do not argue that they are unaware of exactly what conduct caused Defendants' challenged conduct. Rather, as Plaintiffs are well aware, the no contact with minors condition was implemented based on Joesph's conviction for a sexual offense against a minor. Additionally, while the plaintiff in *Fikre* was unaware of what actions caused him to be placed on the No Fly List, he was unable to avoid specific actions to prevent a relisting, Plaintiffs here know what Joseph's conditions of supervised release are.

Joseph has now been living with his children for nearly five years (July 2019 to present) without rescission of his rights. Plaintiffs argue that because Defendants can rescind his right to live with his children "for cause," they may possibly violate his due process rights in the future and rescind his rights for any violation of his parole conditions that are not relevant to the safety of his children. The mere possibility that a party may suffer future harm is insufficient to preserve a case or controversy; the threat of injury must be "real and immediate," not "conjectural" or "hypothetical." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also City News & Novelty Inc. v. City of Waukesha*, 531 U.S. 278, 283 (2001). The Board granted Plaintiffs' request following an individualized evaluation of Joseph's risk to his children and found no reason to deny the request. Plaintiff was then granted LWC requests on two additional occasions. These facts, a

11

record devoid of evidence of prior actions based on constitutionally impermissible reasons, combined with the length of time Joseph has lived with his children without rescission of his rights, show that it is absolutely clear that imposition of the no-contact provision of Joseph's parole is not *reasonably* expected to recur. If Defendants rescind Plaintiffs' LWC rights at some point in the future without due process or for reasons unrelated to the safety of his children, Plaintiffs are free to file a new civil rights suit. Therefore, the Court finds Plaintiffs claims have become moot and grants Defendants' motion for summary judgment.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 116) is **GRANTED**. Plaintiffs' motion for summary judgment (ECF No. 117) is **DENIED as moot**. An appropriate Order accompanies this Opinion.

**DATED**: May 22, 2024

_____
**JULIEN XAVIER NEALS**
**United States District Judge**